IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TED COX, | ) |
| | ) |
|        **Plaintiff,** | ) |
| | ) |
| vs. | )   Case No. 16-cv-137-SMY-RJD |
| | ) |
| WEXFORD HEALTH SOURCES, INC., et al., | ) |
| | ) |
|        **Defendants.** | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Ted Cox, a former inmate of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at Lawrence Correctional Center ("Lawrence"). Specifically, Plaintiff alleges that Defendants failed to provide him with appropriate treatment for his umbilical hernia. Plaintiff proceeds on the following Counts:

**Count 1:** Defendants Coe and Jenkins violated Plaintiff's Eighth Amendment rights by acting with deliberate indifference to his serious medical needs by failing to provide surgical treatment for Plaintiff's umbilical hernia.

**Count 2:** Defendant Wexford violated Plaintiff's Eighth Amendment rights by acting with deliberate indifference to his serious medical needs by maintaining a policy or practice of denying necessary surgical treatment for umbilical hernias.

**Count 3:** Defendants violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment by denying surgical treatment to Plaintiff but providing such treatment to similarly situated prisoners.

This matter is now before the Court for consideration of Defendants' Motion for Summary Judgment (Doc. 84). Plaintiff filed a Response (Doc. 87) and, with leave of Court, Defendants filed a Reply (90). For the following reasons, Defendants' motion is **GRANTED**.

## Factual Background

Plaintiff Ted Cox was housed at Jacksonville Correctional Center in September 2012 (Plaintiff's Deposition, Doc. 85-1 at 9). On September 9, 2012, while working as a house porter, Cox lifted a mop bucket full of water and felt a sudden pain in his belly button area (Id. at 10).

On November 9, 2012, Cox was evaluated by a nurse for "possible hernia he noticed last night reaching for a mop bucket" (Plaintiff's Medical Records, Doc. 85-5 at 24).[1] On December 4, 2012, after an evaluation by the physician, Cox was diagnosed with a small umbilical hernia and small right inguinal hernia (Id. at 25).

Cox was released from prison on December 20, 2012. He sought further treatment for his injuries after being released. (Doc. 85-1 at 11). Cox went to an urgent care clinic and was provided a referral to a surgeon, but did not see the surgeon because he could not afford it at the time (Id. at 12).

Cox was re-incarcerated in 2014 and arrived at Lawrence Correctional Center on September 17, 2014 (Id. at 11). He sought medical treatment for his injuries while at Lawrence (Id. at 12).

On September 30, 2014, Cox presented to health care with signs of acute, severe discomfort and described intermittent throbbing pain related to his hernia (Doc. 87-6 at 2). He rated his pain level at three (Id.). He was provided Acetaminophen and Ibuprofen and told to return if symptoms worsened or interfered with daily functioning (Id.).

Cox was seen in the health care unit by nurse practitioner Laurie Jenkins on October 3, 2014 and reported a history of hernias and sporadic burning pain aggravated by walking and standing for long times (Doc. 85-5 at 1). Cox requested surgery and stated, "It's hard to get a job with a hernia" (Id.). Jenkins examined and assessed Cox and noted no signs of acute stress, and

---

[1] The Court notes there is a discrepancy in the dates regarding when the mop bucket incident occurred, but finds it immaterial for the purposes of this case whether the incident occurred in September or November of 2012.

no masses or bulging at the umbilicus (Id.). She did note an indirect stable inguinal hernia (Id.). Cox was prescribed Motrin and Fiberlax tabs, educated on proper body mechanics, told to follow up with nurse sick call as needed, and was put in for a six-month follow up visit with Dr. Coe at his request. (Id.).

On January 23, 2015, Cox presented to health care with complaints regarding his hernia and was prescribed a hernia belt (Id. at 2). On March 17, 2015, Cox was seen during nurse sick call for an issue regarding the hernia belt (Id.). The nurse noted that he did not have the proper belt and that a new belt was to be issued (Id.). He was placed on the physician assistant call line to discuss his umbilical hernia (Id.).

On April 15, 2015, Cox presented to the nurse sick call for hernia pain and requested a low bunk permit due to his hernia (Id. at 3). He complained that a five inch area of his intestines was hanging out (Id. at 4). The nurse attempted to assess the hernia for possibility of strangled bowel, but Cox refused the assessment (Id.). He stated that he only experienced pain when climbing onto his bunk (Id.). The nurse noted that he did not meet the qualifications for a low bunk permit because he was ambulating without difficulty, and showed no signs or symptoms of discomfort or distress (Id.). The nurse noted that Cox became irate when the requirements were explained, stating, "I want to see the doctor only," and "You don't know what you're doing, you fucking bitch" (Id.). Cox left the room and would not sign the nurse sick call refusal (Id.).

On May 2, 2015, Cox fell on a wet floor, injuring his back and knee (Id. at 5). Medical personnel ordered x-rays of his spine and knee, Motrin, an ace wrap, and a low bunk permit for one month and noted that Cox has "poor direction following skills and uses anger to manipulate the session so that only the parts he wants evaluated can be" (Id. at 6).

Cox was examined by physician assistant Travis James for his hernia complaints on June 8, 2015 (Id. at 7). James noted pain upon palpation of the epididymis on the right testicle and

inguinal canal on the right side (Id.). Cox reported pain but no burning or discharge with urination (Id.). He also reported that an abdominal hernia had been present for 2½ years (Id.). Cox did not want treated for epididymitis (Id.). He also indicated he did not want a hernia belt; he only wanted surgery (Id.).

A nurse noted that Cox refused his Robaxin pain medication from June 10, 2015 through June 15, 2015 (Id. at 8). On July 14, 2015, Cox was seen at the nurse sick call because his umbilical hernia was causing pain (Id. at 17). He reported that "it was getting worse" and causing pain when he got up and down from the top bunk (Id.). The nurse assessed the small nickel-size protrusion to the upper right of the umbilicus and noted, "the hernia is soft, non-tender, and shows no sign of distress" (Id.). Bowel sounds were present in all four quadrants and Cox denied any difficulty with defecation (Id.). The nurse educated Cox on signs and symptoms of distress (Id.). Cox became agitated and stated, "I'm done with health care! No one will do the testing I need", and refused Ibuprofen (Id.). He also stated, "This place is a joke and I don't want to see any of these damn doctors" (Id.). Cox was scheduled for nurse sick call on July 21, 2015 and refused to attend per the C.O. (Id. at 18).

On July 24, 2015, Cox was seen by medical personnel for "burning yet numb, sometimes stabbing" pain of hernia (Id. at 19). He rated his pain level at eight (Id.). The nurse noted that Cox had a small umbilical hernia that is reducible, without signs and symptoms of distress or discomfort (Id.). Cox was not wearing an abdomen binder, and the nurse provided education on wearing one (Id.). The nurse noted that Cox became belligerent when told surgery was not needed at this time (Id.).

On July 29, 2015, Cox was examined by Dr. Coe for the first time (Id. at 20). Cox reported that he believed he had three hernias – right groin, umbilical, and upper-mid abdomen (Id.). Following an examination, Dr. Coe determined that the upper midline issue was a

condition called diastasis recti (Id.). He noted that the umbilical hernia was small, non-tender, and reducible (Id.). The internal ring in the groin bulged with a cough and was tender, and the onset was noted as obesity (Id.). Dr. Coe advised Cox that he should diet and lose weight (Doc. 85-5 at 20).[2]

On September 8, 2015, Cox was scheduled on the nurse line for hernia follow-up (Id. at 21). Cox asked the nurse why he should have to keep paying to come to health care when they were not doing anything for him (Id.). The nurse noted that Cox ambulated into the room without difficulty and had no obvious signs or symptoms of distress or discomfort (Id.). The nurse attempted to educate him on protocol and procedure and offered an assessment, but Cox got up from the chair, threw the copay voucher and ink pen, and left the room (Id.). Cox was again examined and assessed on October 15, 2015 (Id.). He reported irritable bowel syndrome and stated he wanted his hernia fixed (Id.). The medical record notes the hernias are within normal limits (Id.).

On April 8, 2016, Cox was treated in healthcare. He reported that he took someone else's pain pills that were blue and they worked well (Id. at 23). The medical provider noted that he was able to get up and down from the table, could walk around, and had a back supporter but did not wear it (Id.). Cox was offered Tylenol but did not want it (Id.). He was advised to use the back support (Id.).

Cox was released from Lawrence on April 18, 2017 (Doc. 85-1 at 17). He sought treatment for his umbilical hernia from general surgeon, Emily Wilczak, M.D. (Doc. 85-6 at 5). Dr. Wilczak evaluated Cox on June 9, 2017 and determined that he had one umbilical hernia (Id.

---

[2] Cox alleges in his Complaint that the exam Coe performed was painful and that following the exam, Coe told him, "Well, it looks like you need surgery to repair that" but then stated, "You can just get the surgery whenever you get out of prison" (Doc. 1 at 8). Cox asked Coe why he could not get the surgery now and Coe stated, "I like my job and want to keep it, the surgical procedure costs too much, and I am not going to be the go-to doctor for surgeries (Id.). Cox informed Coe that he knew of five other inmates that had received surgery for hernias and Coe told him they had probably filed a lawsuit or had an outside doctor recommend the surgery (Id.).

at 6-7). On June 26, 2017, Dr. Wilczak discussed treatment options with Cox (continue to follow up and monitor the hernia or surgical intervention). (Id. at 8). She advised him that surgical intervention was not emergent (Id.). Cox elected to have Dr. Wilczak perform a surgical repair on the umbilical hernia in August 2017 (Doc. 87-4 at 4).

Cox also sought treatment for his abdominal muscle diastasis from a different surgeon, Dr. Pedro Rodriguez (Doc. 85-1 at 16). Dr. Rodriguez informed Cox that he would not perform surgery unless he lost weight and quit smoking (Id. at 17). Cox did not stop smoking and continues to experience pain in his abdomen (Id.).

On November 27, 2017, Dr. Wilczak noted a mild right groin hernia (Doc. 85-6 at 11). She could not determine whether the hernia had been present before the first surgery (Id.). She noted that the groin hernia was unimpressive, meaning it wasn't big or obvious (Id. at 12-13). Because the symptoms were persisting even after lifting restrictions, she offered to do an operative exploration (Id. at 12).

Cox elected to have the second surgery and Dr. Wilczak found a small hernia in his groin which she repaired (Id. at 13). During her deposition, Wilczak testified that watchful waiting was an option with regard to the groin hernia, but Cox chose not to pursue that option (Id.). In her opinion, hernia repair is an elective surgery as long as the hernia is not strangulated (Id. at 14).

## **Legal Standards**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material

fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). When considering a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

The Eighth Amendment protects inmates from cruel and unusual punishment. U.S. Const., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). As the Supreme Court has recognized, "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, the plaintiff must first show that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

The following circumstances are indicative of an objectively serious medical condition: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

An inmate must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987).

## Discussion

Defendants Coe, Jenkins, and Wexford assert that they are entitled to summary judgment because Coe and Jenkins did not act with deliberate indifference, Wexford did not have a policy precluding Plaintiff from receiving appropriate medical care, and other inmates that received hernia surgeries were not similarly situated to Plaintiff.

### Deliberate Indifference – Jenkins and Coe

While Defendants Coe and Jenkins contend that it is questionable whether Cox's hernias would be considered a serious medical need, their argument for summary judgment is focused on deliberate indifference. Specifically, Defendants argue that Cox received appropriate medical treatment for his hernias during his time at Lawrence.

As an initial matter, the Court notes that in his Response, Cox argues only that Coe was deliberately indifferent to his medical needs and makes no argument regarding Jenkins. As it appears Cox has abandoned his deliberate indifference claim against Jenkins, the Court finds that Jenkins is entitled to summary judgment.

Regarding Dr. Coe, there is no evidence in the record to support a finding of deliberate indifference on his part. Plaintiff was diagnosed with inguinal and umbilical hernias on December 4, 2012, and was released from incarceration sixteen days later. He sought medical treatment for his hernias after being released from prison. Although he received a referral for a surgeon, he did not undergo surgery for his hernias because he could not afford it. Cox was re-incarcerated at Lawrence on September 17, 2014. Shortly after arriving at Lawrence, he sought medical treatment for his hernias and was provided medication for intermittent pain. He was also prescribed a hernia belt. The medical records indicate that he repeatedly refused pain medication and refused to wear the hernia belt prescribed.

Cox first saw Dr. Coe for treatment of his hernias on July 29, 2015. Coe determined that the hernias were small, non-tender, reducible, and did not require surgical intervention. According to Dr. Coe, the cause of the internal groin hernia was obesity, and he suggested that Cox should diet and lose weight. Cox's intermittent pain continued to be addressed with medication.

There is no evidence that surgery was medically necessary for Cox's hernias and that Coe consciously disregarded that need. *Johnson v. Doughtry*, 433 F.3d 1001, 1013 (7th Cir. 2006) (finding that non-surgical treatment of plaintiff's hernias did not amount to deliberate indifference). Rather, the evidence demonstrates Cox's hernias were not strangulated or incarcerated. See *Johnson*, 433 F.3d at 1014 (noting three types of hernias: "(1) a hernia that is strangulated, which is a medical emergency mandating surgery; (2) a hernia that is reducible yet so painful or debilitating that surgery is required; and (3) a hernia that is reducible and, given the dangers and risks inherent in any operation, can be treated through non-surgical means").

The evidence indicates that Dr. Coe's treatment of Cox was grounded in professional judgment and that Cox was afforded adequate, reasonable medical treatment. Cox continued to

Regarding Dr. Coe, there is no evidence in the record to support a finding of deliberate indifference on his part. Plaintiff was diagnosed with inguinal and umbilical hernias on December 4, 2012, and was released from incarceration sixteen days later. He sought medical treatment for his hernias after being released from prison. Although he received a referral for a surgeon, he did not undergo surgery for his hernias because he could not afford it. Cox was re-incarcerated at Lawrence on September 17, 2014. Shortly after arriving at Lawrence, he sought medical treatment for his hernias and was provided medication for intermittent pain. He was also prescribed a hernia belt. The medical records indicate that he repeatedly refused pain medication and refused to wear the hernia belt prescribed.

Cox first saw Dr. Coe for treatment of his hernias on July 29, 2015. Coe determined that the hernias were small, non-tender, reducible, and did not require surgical intervention. According to Dr. Coe, the cause of the internal groin hernia was obesity, and he suggested that Cox should diet and lose weight. Cox's intermittent pain continued to be addressed with medication.

There is no evidence that surgery was medically necessary for Cox's hernias and that Coe consciously disregarded that need. *Johnson v. Doughtry*, 433 F.3d 1001, 1013 (7th Cir. 2006) (finding that non-surgical treatment of plaintiff's hernias did not amount to deliberate indifference). Rather, the evidence demonstrates Cox's hernias were not strangulated or incarcerated. See *Johnson*, 433 F.3d at 1014 (noting three types of hernias: "(1) a hernia that is strangulated, which is a medical emergency mandating surgery; (2) a hernia that is reducible yet so painful or debilitating that surgery is required; and (3) a hernia that is reducible and, given the dangers and risks inherent in any operation, can be treated through non-surgical means").

The evidence indicates that Dr. Coe's treatment of Cox was grounded in professional judgment and that Cox was afforded adequate, reasonable medical treatment. Cox continued to

be monitored by medical staff at Lawrence through 2015 and the beginning of 2016. There is no evidence that Cox's hernias worsened to a point that would make surgery a medical necessity. See *Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011) (evidence of deliberate indifference when plaintiff suffered from hernia for seven years and hernia worsened, constantly protruded, and caused extreme pain and doctors continued with course of treatment despite worsening condition). While Cox alleges his pain worsened, the medical records indicate that he repeatedly refused pain medication and other non-surgical intervention.

Cox was released from incarceration on April 18, 2017. He subsequently sought treatment for his hernias and elected to have surgery in August and November of 2017. According to the surgeon who performed the procedures, "watchful waiting" was a viable treatment option for Cox's hernias. The hernia repairs were an elective surgery because the hernias were not strangulated.

While Cox disagrees with the treatment he received from Dr. Coe, mere disagreement does not amount to deliberate indifference. *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). There is simply no evidence that Dr. Coe acted with a conscious disregard toward Cox's hernias. Therefore, Dr. Coe is entitled to summary judgment on Cox's deliberate indifference claim against him.

### Deliberate Indifference – Wexford

In *Monell v. Dept. of Social Services of the City of New York*, the Supreme Court held that a municipality may be liable under § 1983 for constitutional violations resulting from a policy or custom of the municipality, 436 U.S. 658, 690 – 91 (1978). The Seventh Circuit has extended *Monell* beyond municipalities to include private corporations providing government services, such as Wexford. See *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782, 789 (7th Cir.

2014) (citing *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)). Therefore, a corporation that has contracted to provide essential government services may be held liable under § 1983 for constitutional violations caused by unconstitutional policies or customs. *Id*.

Here, there is no evidence of unconstitutional policies or customs on the part of Wexford. As previously discussed, there is no evidence of deliberate indifference associated with the treatment of Cox's hernia, and without evidence of deliberate indifference, Wexford cannot be held liable for damages on Cox's *Monell* claim. *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014)(citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571 (1986)). Further, there is no evidence that any Wexford policies resulted in the denial of Cox's request for surgery. Cox testified that he believed there were cost-cutting policies that prevented surgery because Dr. Coe told him "I like my job and want to keep it, the surgical procedure costs too much, and I am not going to be the go-to doctor for surgeries." However, the evidence indicates that other inmates were referred to a surgeon for hernias when it was determined to be medically necessary. Thus, Wexford is entitled to summary judgment as to the deliberate indifference claim.

## Equal Protection

Defendants also argue they are entitled to summary judgment on Plaintiff's Fourteenth Amendment equal protection claim. In his Complaint, Plaintiff alleged that he was treated differently from at least five other inmates at Lawrence because they received surgical procedures for their hernias. But he makes no argument regarding his Fourteenth Amendment claim in his Response. The Court considers Plaintiff's failure to respond an admission of the merits of Defendants' motion as it relates to the Fourteenth Amendment claim. Moreover, there is no evidence that the inmates who received surgical intervention were in the same condition as Cox. Therefore, Defendants are entitled to summary judgment.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 84) is **GRANTED**; Plaintiff's claims against Defendants Jenkins, Coe and Wexford are **DISMISSED WITH PREJUDICE**.

Defendant Stephan Duncan, Warden of Lawrence, was added to the case for the purposes of injunctive relief. On May 3, 2018, a Stipulation of Dismissal (Doc. 80) was filed by the parties dismissing Duncan from the case. Accordingly, the Clerk of Court is **DIRECTED** to enter judgment for all Defendants and to close the case.

**IT IS SO ORDERED.**

**DATED: August 24, 2018**

s/ Staci M. Yandle
**STACI M. YANDLE**
**United States District Judge**